### CONSTRUCTION OF WORKMEN'S COMPENSATION ACT.

Common Pleas Court of Franklin County.

CHARLES P. BROWN v. THE JEFFREY MANUFACTURING COMPANY.

Decided, March 11, 1913.

*Master and Servant—New Compensation Act Does Not Create Liability Without Fault—Employe Pulls Stool From Under a Fellow Employe, Who Fell and Was Injured—Petition Against Employer for Damages Demurrable—Section 1465-60.*

An employer is not liable under the workmen's compensation act for an injury to an employe caused by a mischievous act by a fellow employe not in the course of his employment.

*Hugh Huntington,* for plaintiff.
*Arnold & Game,* contra.

The allegations in the petition so far as the point raised by the demurrer, passed upon by the court, is concerned are as follows:

"On September 26, 1912, shortly after the noon hour, this plaintiff in the course of his employment and under the direction

of a foreman was seated on a stool operating the drill press above referred to. Plaintiff leaned forward in the course of his employment and under the direction of his foreman to turn on a small water valve connected with the drill press. His duties required him so to do many times through a working day. While leaning forward, John Blakesly, an employe of this defendant, wrongfully pulled the said stool from under plaintiff causing plaintiff to fall to the floor. While falling to the floor plaintiff struck his right elbow on the edge of a steel bucket which steel bucket was filled with iron bolts. The edge of said steel bucket was rough and was covered with dirt and grease. The blow of the arm on the edge of the bucket caused a cut and bruise upon said right elbow, leaving his right arm stiff and weak.''

BIGGER, J.

In my opinion the petition is demurrable.

If the construction contended for by plaintiff's counsel is to be put upon this provision of the statute, I think it would be clearly in violation of the nineteenth Article of the Bill of Rights which provides that private property shall ever be held inviolate but subservient to the public welfare. It is not averred in the petition that the defendant was guilty of any wrong or neglect or default whatever, but the right to hold that the defendant is liable in damages is claimed by virtue of the language of the act of May 31, 1911, which act was decided by the Supreme Court to be constitutional. The point here raised, however, was not raised or discussed by counsel in that case, and was not considered by the court in so far as the scope of the consideration of the act by the court is disclosed by the opinion in the case. On the contrary, counsel representing the relator say in their breif at page 355:

''It clearly appears that there is no attempt here to create a liability without fault as in the New York statute,'' etc.

The common law, and the law of this state as it existed before the passage of this act, did not recognize a liability of the master, except for his own fault of wrong and for the wrongs committed by his agents while acting within the scope of their agency, which wrongs are attributable to him. It was never the law that an employer was liable for torts committed by his agent and servant outside the scope of his employment. He was liable for the torts of his agents and servants committed within the scope of

their employment. This principle of liability rests upon principles of justice and equity, and upon the principle that the employer controls the acts of his servants which are within the scope of his employment and reasonably and justly hold him liable for the wrongful acts of his agents done while carrying out the thing committed to his care. But the rule ceases where its reason ceases to exist, and for the wanton and malicious acts of the servant or agent outside the scope of his employment the master was never held liable. But upon what principle of right or justice can a man's property be taken by law and given to another when he is guilty of no fault or neglect whatever, and when the wrongful act was not done within the scope of the employment of his agent or servant? Private property can not be taken by law for private use, but only for public use, when the public welfare demands it. It is not apparent that the public welfare is to be subserved by holding a person liable in damages, if one man wantonly assaults and injures another, merely for the reason that he happens to employ both of them. It would certainly be somewhat of a surprise to the profession generally to learn that under the statute, when one of two employes murders the other while that other is engaged at his employment, that the employer is liable in damages for his death, merely because he also employs the murderer. In my opinion, to give the statute this construction, would be to render it obnoxious to the guaranty of the Constitution of the inviolability of private property. Nor did the Supreme Court give it the construction contended for. On the contrary, Judge Johnson says, at page 405, speaking of this act:

"It creates no new right or new remedy for wrong done."

The contention of counsel is that it does create a new right, one that did not exist either at common law or by statute, to-wit, that an employer without wrong or default on his part shall be compelled to make compensation to one employe who is injured by another's wilful act not in the scope of his employment, but entirely without the scope of his employment. If this act creates no new right, as Judge Johnson says, then it clearly does not give a right of action to the plaintiff upon the facts stated.

Again it is said on page 392:

"So that an employer who elects not to come into the plan of insurance may still escape liability, if he is not guilty of wrongful act, neglect or default."

It is plain from the opinion of Judge Johnson that the Supreme Court construed this act as simply affecting the defenses which might be made in the cases provided for therein and not that it conferred rights of action against an employer which it did not before exist and indeed this is the plain statement of Judge Johnson as I have pointed out.

In my opinion, the language "in the course of employment" is to be applied as well to the person injured as to the one committing the injury. In construing an act, all of its different provisions are to be construed together. That this language applies as well to the person committing the injury as to the one injured seems to be very strongly reinforced by a consideration of the provisions of Section 21-2 of the act which provides that in the case of injury arising from the wilful act of an employer or his officers or agents to any employe in the course of employment and the employer has paid into the state insurance fund the premium provided for by the act, that it is optional for the injured employe to take under the provisions of the act or to institute a proceeding in the courts to recover his damage. In such case this act is not applicable and it is not to be supposed that the Legislature was ignorant of the fact that for wanton and wilful torts of an agent, the master is not liable except when the tort is committed within the course of his employment. The fact that the Legislature, therefore, provided that for the wilful torts of an agent the injured employe might either take under the statute or sue to recover his damages at law shows that the Legislature meant that it was only for wilful torts committed in the course of the employment that it was legislating about and not for a class of cases where there was no liability of law and for which injuries the injured employe could not maintain an action at law against the employer.

In the light of the above considerations I am led to the conclusion that the petition does not state facts which entitle the plaintiff to any relief, and the demurrer is sustained. The only right of action in such case is against the person who was the cause of the injury.